UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

OMEGA CONSTRUCCIONES
INDUSTRIALES, S.A. DE C.V., SINOHYDRO
COSTA RICA, S.A., DESARROLLO Y
CONSTRUCCIONES URBANAS, S.A. DE C.V.
and CAABSA INFRAESTRUCTURA, S.A. DE
C.V.,

                Petitioners,

     v.

COMISIÓN FEDERAL DE ELECTRICIDAD,

               Respondent.

Case No.  _____

---

## PETITION TO CONFIRM AND ENFORCE FOREIGN ARBITRAL AWARD

Andreas A. Frischknecht
Ted Debonis

**C h a f f e t z   L i n d s e y** LLP

1700 Broadway, 33rd Floor
New York, NY 10019
Tel. +1 212 257 6960
Fax +1 212 257 6950
www.chaffetzlindsey.com

*Attorneys for Petitioners Omega
Construcciones Industriales, S.A. de C.V.,
Sinohydro Costa Rica, S.A., Desarrollo y
Construcciones Urbanas, S.A. de C.V., and
CAABSA Infraestructura, S.A. de C.V.*

# TABLE OF CONTENTS

Page

Preliminary Statement ....................................................................................... 1

Parties ................................................................................................................ 3

Jurisdiction and Venue ...................................................................................... 4

Factual Background ........................................................................................... 8

    A.   Background to the Dispute ...................................................................... 8

    B.   The Arbitration ..................................................................................... 10

ARGUMENT ................................................................................................... 13

    A.   Petitioners Have Satisfied All of the Statutory Conditions for Confirmation and Enforcement ....................................................................................................... 14

    B.   None of the Limited Grounds to Refuse Confirmation and Enforcement Exist ................ 15

    CONCLUSION ........................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Agility Public Warehousing Co. v. Supreme Foodservice GmbH*, 840 F. Supp. 2d 703 (S.D.N.Y. 2011), *aff'd*, 2012 WL 3854880 (2d Cir. Sept. 6, 2012)........................................................... 14

*Agility Public Warehousing Co. v. Supreme Foodservice GmbH*, 840 F. Supp. 2d 710 (S.D.N.Y 2011) ......................................................................................................................................... 15

*American Constr. Mach. & Equip. Corp. v. Mechanised Constr. of Pakistan, Ltd.*, 659 F. Supp. 426 (S.D.N.Y. 1987), *aff'd*, 828 F.2d 117 (2d Cir. 1987) ......................................................... 14

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ................................................................. 7

*Capital Ventures Int'l v. Republic of Argentina,* 552 F.3d 289 (2d Cir. 2009).............................. 7

*F. Hoffmann-La Roche Ltd. v. Qiagen Gaithersburg, Inc.*, 730 F. Supp. 2d 318 (S.D.N.Y. 2010) .................................................................................................................................................. 15

*Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic,* 582 F.3d 393 (2d Cir. 2009) ........................................................................................................................................... 6

*Hanil Bank v. PT. Bank Negara Indonesia (Persero),* 148 F.3d 127 (2d Cir. 1998) ............... 6, 7

*In re Waterside Ocean Nav. Co.*, 737 F.2d 150 (2d Cir. 1984) .................................................. 14

*MGM Productions Group v. Aeroflot Russian Airlines*, 573 F. Supp. 2d 772 (S.D.N.Y. 2003), *aff'd*, 91 F. App'x 716 (2d Cir. Feb. 9, 2004)........................................................................... 15

*Norwest Corp. & Subsidiaries v. Comm'r,* 70 T.C.M. (CCH) 779 (T.C. 1995) ........................... 4

*Republic of Argentina v. Weltover, Inc.,* 504 U.S. 607 (1992) ..................................................... 6

*Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396 (2d Cir. 2009)................................ 14

*In re Oltchim, SA.*, 348 F. Supp. 2d 97 (S.D.N.Y. 2004)............................................................ 15

*Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15 (2d Cir. 1997)......... 15

*Zeiler v. Deitsch*, 500 F.3d 157 (2d Cir. 2007) .......................................................................... 13

**Statutes**

28 U.S.C. §§ 1330, 1391, 1602-1611 ................................................................................. *passim*

9 U.S.C. §§ 201-207 ........................................................................................................... *passim*

21 U.S.T. 2517 .......................................................................................................................... 1, 16

Petitioners Omega Construcciones Industriales, S.A. de C.V. ("**Omega Construcciones Industriales**"), Sinohydro Costa Rica, S.A. ("**Sinohydro Costa Rica**"), Desarrollo y Construcciones Urbanas, S.A. de C.V. ("**Desarrollo y Construcciones Urbanas**") and Caabsa Infraestructura, S.A. de C.V. ("**Caabsa Infraestructura**") (together, the "**Petitioners**"), by and through their attorneys, allege as follows in support of their petition for entry of an order confirming and recognizing, pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517 (the "**New York Convention**" or the "**Convention**") and Chapter 2 of the Federal Arbitration Act, 9 U.S.C. § 201 *et seq.* (the "**FAA**"), the final arbitral award dated June 22, 2020 (the "**Award**")[1] in the arbitration (the "**Arbitration**") between Petitioners on the one hand, and Respondent Comisión Federal de Electricidad (the "**CFE**" or "**Respondent**") on the other hand.   The Arbitration was captioned *Omega Construcciones Industriales, S.A. de C.V. et al. v. Comisión Federal de Electricidad* and was seated in Mexico City, Mexico, under the Rules of the London Court of International Arbitration ("**LCIA**").

## PRELIMINARY STATEMENT

Petitioners bring this proceeding under the FAA and the New York Convention to confirm and recognize the Award rendered by an international arbitral tribunal in Petitioners' favor and against the CFE, and to enter judgment in Petitioners' favor in the aggregate principal amount of approximately $224.7 million plus interest, plus approximately MX$28 million for legal fees and arbitration costs (over $1.2 million at current exchange rates).  The CFE is a state-owned Mexican corporation responsible for the generation, transmission and commercialization of electric energy

---

[1]   A true and correct copy of the Award in the original Spanish, accompanied by a certified English translation, is attached as Exhibit A to the July 23, 2020 Declaration of Luis Asali Harfuch ("Asali Declaration").

1

in Mexico, and is thus an agency or instrumentality of Mexico under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-1611 (the "**FSIA**").  Petitioners are Mexican and Costa Rican construction companies engaged as a joint venture.

The dispute resolved by the Award arises from a contractual relationship between Petitioners and the CFE.  Petitioners jointly formed a consortium that was awarded the Mixed Contract of Financed Public Works No. PIF-005/2015 (the "**Contract**") for the construction of Hydroelectrical Project 289 CH Chicoasén II (the "**Project**") in the municipality of Chicoasén in Chiapas, Mexico.  Under the Contract, Petitioners were to build a hydroelectric plant on the Grijalva River to meet the growing energy requirements of southeastern Mexico.  The parties executed the Contract on January 23, 2015, intending that work begin immediately and end in July 2018.

During construction of the Project, Petitioners encountered significant interference with their work:  a general state of violence at the worksite, 22 blockades, compelled use of unskilled labor and improper equipment, and restricted site access.  This interference resulted in Project delays and additional costs to Petitioners.  Eventually, work on the Project had to be suspended in July 2016.  Because the interference with Petitioners' work was attributable to the CFE under the terms of the Contract, Petitioners initiated LCIA arbitration in October 2016 seeking a declaration that the Contract was terminated, and to recover the amounts rightfully due to them.  The CFE challenged the tribunal's jurisdiction to hear certain claims and asserted counterclaims for breach of contract and purportedly unjustified abandonment of the Project.

In its 280-page Award, the arbitral tribunal unanimously found that it had jurisdiction to hear all of Petitioners' claims, rejected all of the CFE's counterclaims, and found the CFE to be in breach of the Contract.  It further found that Petitioners had not breached any of their contractual

2

obligations, and that they had rightfully suspended work on the Project. Accordingly, the tribunal unanimously declared the Contract terminated for reasons attributable to the CFE, and directed the CFE to pay Petitioners the following amounts (together, the "**Awarded Amounts**"): $113,434,377.82 for the Contract's Termination Value[2]; $77,617,573.00 for Unrecoverable Expenses; $4,040,823.26 for bank fees incurred in connection with the financing of the Project; $29,624,002.33 for lost profits, plus interest thereon at the rate of 0.5% monthly (equivalent to 6% annually); MX$17,163,914.40 for legal costs incurred in the Arbitration; and MX$10,943,960.79 for arbitration costs. The tribunal also awarded Petitioners additional non-monetary relief, as detailed below.

The CFE has failed to pay any of the Awarded Amounts. As a result, Petitioners are entitled to a judgment confirming and enforcing the Award against the CFE.

## **PARTIES**

1.    Petitioner Omega Construcciones Industriales is a corporation organized and existing under the laws of Mexico, with its principal place of business at Av. Cordillera de los Andes No. 310, Col. Lomas de Chapultepec, Delegación Miguel Hidalgo, 11000, Mexico City, Mexico.

2.    Petitioner Desarrollo y Construcciones Urbanas is a corporation organized and existing under the laws of Mexico, with its principal place of business at Av. Manuel J. Clouthier 3112, Cumbres del Valle, 64650 Monterrey, Nuevo Leon, México.

---

[2]    Capitalized terms not otherwise defined herein are as defined in the Award and/or the Contract.

3

3.      Petitioner Caabsa Infraestructura is a corporation organized and existing under the laws of Mexico, with its principal place of business at Av. Sta. Fe 270, Santa Fe, Zedec Santa Fe, Álvaro Obregón, 01210 Álvaro Obregón, Ciudad de Mexico, México.

4.      Petitioner Sinohydro Costa Rica is a corporation organized and existing under the laws of Costa Rica, with its principal place of business at De la Casa de Oscar Arias, 100m Oeste, 200m Sur, Mano Derecha, Casa Esquinera Blanca y Gris, Rohrmoser, Pavas, San José Costa Rica.

5.      Respondent CFE is a Mexican company wholly owned by the Mexican state headquartered at Avenida Paseo de la Reforma No. 164, 11th floor, Col. Juárez, Delegación Cuauhtémoc, 06600, Mexico City, Mexico.  The CFE is an agency or instrumentality of Mexico.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction in this proceeding pursuant to 9 U.S.C. §§ 201 and 203, which provide that United States District Courts shall have original jurisdiction over actions and proceedings governed by the New York Convention.  Both Mexico and the United States are signatories to the Convention.

7.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1330(a), which provides that United States District Courts shall have original jurisdiction over any nonjury civil action against a foreign state, as defined in 28 U.S.C. § 1603(a), unless the foreign state is entitled to immunity under 28 U.S.C. §§ 1605-1607 or an applicable international agreement. Section 1603(a) defines a "foreign state" to include "an agency or instrumentality," as defined in § 1603(b).

8.      Three of the FSIA's exceptions to immunity enumerated in 28 U.S.C. §§ 1605-1607 independently confer subject matter jurisdiction to recognize and enforce the Award against the CFE here.  *First,* the "arbitration" exception in 28 U.S.C. § 1605(a)(6) confers jurisdiction in

4

an action "to confirm an award made pursuant to [a foreign state's] agreement to arbitrate" and "governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards." 28 U.S.C. § 1605(a)(6). These requirements are satisfied here: the Award Petitioners seek to confirm is the product of the arbitration agreement between Petitioners and the CFE, and it is governed by the New York Convention.

9.      *Second,* the "waiver" exception in 28 U.S.C. § 1605(a)(1) confers jurisdiction in an action "in which the foreign state has waived its immunity either explicitly or by implication . . ." This exception applies here because the CFE in Clause 31.4 of the Contract expressly waived its sovereign immunity as follows:

> **Waiver of Immunity.** To the extent allowable under the Applicable Law [i.e., Mexican law], both Parties herewith ***expressly and irrevocably waive any right of immunity*** which either one of them or their assets may have or acquire in the future ***(whether characterized as sovereign immunity or any other type of immunity)*** in respect to any arbitration pursuant to Clause 31.3 or any other legal procedure initiated to enforce an arbitral award resulting from any arbitration pursuant to Clause 31.3, whether in Mexico or in any other foreign jurisdiction, including but not limited to immunity against service of process, immunity of jurisdiction, or immunity against the judgement rendered by any court or tribunal, immunity against orders to enforce the judgement, and immunity against precautionary seizure of any of their assets . . . .

Asali Decl. Ex. B, at 4 (emphasis added).

10.      *Third*—and finally, the "commercial activity" exception in 28 U.S.C. § 1605(a)(2) confers subject matter jurisdiction because this proceeding is "based upon . . . an act outside the territory of the United States in connection with a commercial activity of the [the CFE] elsewhere" that "cause[d] a direct effect in the United States." 28 U.S.C. § 1605(a)(2). Clause 10.1 of the Contract required the CFE to remit all payments due under the Contract, including the Termination Value that is the subject of the Award, to a designated bank account located in New York. Asali Decl. Ex. B, at 3. And Petitioners subsequently designated a bank account at Chase Manhattan Bank in New York for the CFE's remittance of payment. The CFE's failure to make the required

payment in New York caused a "direct effect" in the United States sufficient to confer jurisdiction under § 1605(a)(2). *See Republic of Argentina v. Weltover, Inc.,* 504 U.S. 607, 619 (1992) (holding that "direct effect" in the United States existed where "[m]oney that was supposed to have been delivered to a New York bank for deposit was not forthcoming"); *Hanil Bank v. PT. Bank Negara Indonesia (Persero),* 148 F.3d 127, 132 (2d Cir. 1998) (same).

11.     The Court has personal jurisdiction over the CFE pursuant to 28 U.S.C. § 1330(b), which authorizes personal jurisdiction over a foreign state (including an agency or instrumentality of a foreign state such as the CFE here) that is not immune from suit, provided that service of process is effected in accordance with 28 U.S.C. § 1608.   Petitioners will serve the CFE in accordance with 28 U.S.C. § 1608(b), which governs service on agencies and instrumentalities of a foreign state.

12.     The Second Circuit has yet to decide whether an agency or instrumentality of a foreign state (as distinguished from the foreign state itself) is entitled to due process protection. *See Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic,* 582 F.3d 393, 400 (2d Cir. 2009) (suggesting, without deciding, that agencies and instrumentalities "may indeed lack due process rights like a foreign state").   But even assuming that the CFE has due process rights in this proceeding, the CFE is subject to this Court's personal jurisdiction for at least two independent reasons.

13.     *First,* the CFE's contacts with the United States, and with New York in particular, are more than sufficient to satisfy due process.   Pursuant to Clause 10.1 of the Contract, the CFE was required—but failed—to remit the very Termination Payment at issue in the Arbitration, and which has now been awarded to Petitioners in the Award, to a designated bank account located in New York.   The CFE's failure to make that payment in New York as required satisfies the due

process standard for jurisdiction over the CFE in this proceeding. *Hanil Bank,* 148 F.3d at 134 (holding that defendant instrumentality was subject to personal jurisdiction because it "should reasonably have expected to be sued in the United States were it to fail to make a payment in New York"). The CFE's agreement—in the Contract of which it was the principal drafter—to denominate all of its payment obligations under the Contract in U.S. dollars further reinforces that the CFE reasonably should have anticipated proceedings in the United States to enforce a future U.S. dollar award in Petitioners' favor, such as the Award here.

14.     *Second,* both parties in Clause 31.4 of the Contract "waive[d] any right of immunity which either one of them or their assets may have or acquire in the future (whether characterized as sovereign immunity *or any other type of immunity*) in respect to any . . . legal procedure initiated to enforce an arbitral award resulting from any arbitration pursuant to Clause 31.3, whether in Mexico or in any other foreign jurisdiction" (emphasis added). Asali Decl. Ex. B, at 4. The quoted language constitutes a waiver by the CFE of any personal jurisdiction defense it otherwise might have had in this proceeding. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473 n.14 (1985) ("[B]ecause the personal jurisdiction requirement is a waivable right, there are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court.") (internal quotations and citation omitted); *but see Capital Ventures Int'l v. Republic of Argentina,* 552 F.3d 289, 291-92 (2d Cir. 2009) (interpreting, in *dicta,* Argentina's waiver of "immunity (sovereign or otherwise) from jurisdiction of any court" in a bond offering circular governed by German law as not amounting to a waiver of personal jurisdiction).

15.     Finally, venue in this District is proper pursuant to 9 U.S.C. § 204 and 28 U.S.C. § 1391(f).

## FACTUAL BACKGROUND

### A.    Background to the Dispute

16.    In June 2014, the CFE launched a bidding process for construction of the Chicoasén II Project, a hydroelectric plant with an estimated average output of 631 GWh intended to augment the electricity supply in southeastern Mexico.  Asali Decl. Ex. A, Award at ¶ 128.  Petitioners formed a consortium to participate in the bidding process and were awarded the Contract in January 2015.  *Id.*, at ¶ 129.  Pursuant to Clause 13.1 of the Contract, the works were to be completed by July 2018.  *Id.*, at ¶ 131.  The total Contract price was $386,420,680.99, plus value added tax (VAT), payable to a New York bank account pursuant to Clause 10.1.  *Id.*, at ¶ 136.

17.    Clause 26.2 of the Contract describes the various scenarios that constitute an event of breach by the CFE.  *Id.*, at ¶ 324 n.338.  Clause 26.4, in turn, provides that if such an event of breach occurred, Petitioners could terminate the Contract, provided that they obtained a declaration to that effect in an arbitration proceeding pursuant to Clause 31.3.  *Id.*, at ¶ 369.  Additionally, Clause 27.4 provides that in cases of force majeure or acts of god, Petitioners could seek early termination of the Contract.  *Id.*, at ¶ 209.

18.    At the outset, all of the prerequisites for the Project's successful completion appeared to be in place.  Petitioners had the equipment required to perform the works and had entered into a collective bargaining agreement with a Mexican labor union whereby Petitioners undertook to hire workers from that union to carry out the works.  For its part, the CFE undertook to ensure uninterrupted access to the site throughout the construction of the Project.

19.    However, the reality Petitioners encountered was far different from what they had been led to expect.  Problems arose almost as soon as the works began, causing multiple delays and changes to the initial construction plan.  In particular, the Project was hampered by multiple

work strikes and at least 22 blockades of access to the site by various outside groups – each with its own claims and demands.  *Id.*, at ¶¶ 138-45, 375.

20.     Most of these strikes and blockades were triggered by the failure of the CFE to fulfill certain commitments made to the people of Chicoasén (including payment for the use of the land at the Project site; provision of a potable water system for the community; improvements to the electric grid; construction of schools and sports facilities; and employment of local residents and use of local trucking services for the Project).  *Id.*, at ¶ 446.  Petitioners were previously unaware of these commitments, which compelled them to hire local workers and local dump trucks to prevent further blockades and delays.  The local union workers proved to be less productive, and the locally sourced trucks had a lower capacity, than the workers and trucks Petitioners originally intended to employ.

21.     Additionally, the Project site is located on an archeological site and is therefore under the supervision of Mexico's National Institute of History and Anthropology ("**INAH**").  As a result, traffic and construction bans were in place that affected broad swaths of the site.  On several occasions, Petitioners implored the CFE to take action to obtain a lifting of the INAH bans.  *Id.*, at ¶ 584.  But they never were, and Petitioners ultimately had no choice but to redesign the construction plans, which led to further delays and added costs.

22.     Meanwhile, the blockades not only persisted, they became so severe that in July 2016, the CFE ordered the temporary suspension of the works.  *Id.*, at ¶ 532.  The CFE issued multiple, consecutive 60-day suspension orders, the result of which, as the tribunal found, was that "the Project was kept in suspense, without the work being resumed a single day, between 12 July 2016 and 22 June 2017."  *Id.*

### B.     The Arbitration

23.     On October 26, 2016, Petitioners commenced LCIA arbitration in Mexico City against the CFE pursuant to the parties' arbitration agreement in Clause 31.3 of the Contract, which provides:

> **31.3. <u>Arbitration</u>**. All disputes which may arise in connection with this Agreement, other than disputes which must be resolved in accordance with Clause 31.2 must be decided upon, exclusively and in a final manner, in accordance with the Rules of Arbitration of the London Court of International Arbitration, by 3 (three) arbitrators, one elected by each Party, with the third arbitrator appointed by the Parties or by the arbitrators who have already been appointed and, in case no agreement is reached in this respect, by the London Court of International Arbitration (hereinafter the LCIA). The arbitrators shall preferably be familiar with Mexican law. The seat of arbitration shall be Mexico City, Federal District, and the proceedings shall be conducted in Spanish. The Applicable Law to the merits and, on a subsidiary basis, to the procedure in matters not covered by the Rules of Arbitration of the LCIA shall be the one stipulated in Clause 31.1. Insofar as the procedure is concerned, matters not covered by the Rules of the London Court of International Arbitration will be governed by the rules determined by the Parties or, in the absence thereof, by the Arbitral Tribunal. The arbitration proceedings shall be confidential, and any Person participating therein must maintain such confidentiality. The aforementioned confidentiality must be maintained unless a competent authority requires disclosure in accordance with the Applicable Law. It is understood that the Arbitral Tribunal must accept as binding determinations by the Expert, if any, concerning technical or administrative aspects as long as they are within the scope of such Expert's assignment.

Asali Decl. <u>Ex. B</u>, at 4.

24.     An arbitral tribunal, consisting of the presiding arbitrator Mr. Victor M. Ruiz and two co-arbitrators, Mr. Gerardo Lozano Alarcón and Mr. Fernando del Castillo Elorza, was duly constituted to adjudicate the parties' claims on February 20, 2017.  *See* Asali Decl. <u>Ex. A</u>, Award, at ¶ 10.

25.     The procedural history of the Arbitration is set forth in detail in the Award.  *See id.*, at ¶¶ 11-115.  Following multiple rounds of written submissions, a two-week in-person hearing took place in Mexico City commencing on November 12, 2018, followed by further post-hearing submissions.  *Id.*, at ¶¶ 99, 109.

26.     Petitioners sought termination of the Contract based on the CFE's contractual breaches and full compensation for the damages they had incurred during the construction of the Project.  More specifically, Petitioners requested *inter alia* that the tribunal:

- Declare that it had jurisdiction over the dispute;

- Declare that the CFE had breached the Contract and that Petitioners had not; and declare the Contract terminated;

- Order the CFE to pay the Termination Value  of $113,434,377.82, expenses in the amount of $77,617,573, additional damages in the amount of $4,040,823.26 and lost profits in the amount of $29,624,002.23;

- Order the CFE to release Petitioners from any claim of liability claimed by any third party, arising out of the CFE's breaches under the Contract; and

- Order the CFE to pay all legal fees and costs of the Arbitration.

*Id.*, at ¶¶ 155-60.

27.     For its part, the CFE requested *inter alia* that the tribunal:

- Declare (on the grounds discussed immediately below) that both the arbitrability of the parties' dispute and the tribunal's jurisdiction to hear it were limited;

- Declare that Petitioners had breached their contractual obligations and therefore had forfeited their rights to request the termination of the Contract;

- Deny all of Petitioners' claims (or, if the tribunal were to declare the Contract terminated, deny all of Petitioners' claims for damages);

- Declare that the CFE has the right to impose sanctions on the Petitioner; and

- Order Petitioners to pay all costs and expenses of the Arbitration.

*Id.*, at ¶¶ 161-70.

28.     On June 22, 2019, the tribunal rendered the Award.  With respect to arbitrability and its  jurisdiction to decide the parties' merits dispute, the tribunal reached three unanimous conclusions.  *First,* it rejected the CFE's argument that, under Clause 31.2 of the Contract, disputes relating to technical or administrative issues (including those that relate to the cause for a delay in the Project and Termination Value) must be resolved by expert determination under LCIA rules. The tribunal rejected this argument based on Clause 31.3 of the Contract, which provides that disputes between the parties that do not *exclusively* involve issues of a technical or administrative nature should be submitted to arbitration.  Where resolution of the parties' dispute involves factual issues that are not exclusively technical or administrative, the arbitration agreement confers jurisdiction upon the arbitral tribunal to determine the dispute.  *See id.*, at ¶ 255.

29.     *Second,* the tribunal rejected the CFE's argument that certain claims were non-contractual in nature and thus purportedly not subject to the Contract's arbitration clause.  Specifically, the CFE argued that Petitioners had asserted claims relating to the CFE's breach of commitments to the population of Chicoasén, purportedly were not arbitrable but instead subject to the exclusive jurisdiction of the Mexican courts because they related to the CFE's public authority.  But the tribunal found that Petitioners had not, in fact, invoked rights or made claims under the CFE's commitments to third parties.  Instead, those commitments simply formed the backdrop to the contractual dispute between Petitioners and Respondent at issue in the arbitration. Accordingly, the tribunal found that resolution of the parties' contractual dispute would not require the tribunal to determine the rights of any third parties.  *See id.*, at ¶ 265.

30.     *Third,* the tribunal  rejected the CFE's objection that it lacked jurisdiction to determine Petitioners' entitlement to monetary damages because the Termination Value purportedly had to be determined by the parties jointly in an administrative proceeding.  As a

12

threshold matter, the tribunal deemed this objection inadmissible because it was "submitted in violation of the procedural rules established in [the tribunal's] Procedural Order No. 1." *Id.*, at ¶ 269.  Nonetheless, the tribunal proceeded to consider the merits of the CFE's objection. But it found the CFE's argument to be "illogical and contrary to the Parties' agreement" because the parties had expressly agreed to "submit *'all disputes resulting from the […] Contract'* to arbitration under the LCIA Rules." *Id.*, at ¶ 281 (italics in original).

31.     On that basis, the tribunal unanimously declared the termination of the Contract for reasons attributable to the CFE in accordance with Clause 26.4 (b) of the Contract, and directed the CFE to pay Petitioners the Awarded Amounts. *Id.*, at ¶ 963(b).  Moreover, the tribunal unanimously rejected the CFE's counterclaims and found the CFE responsible for any damage caused to the Petitioners' equipment after the July 2016 blockade, thus safeguarding Petitioners' rights to claim such damages from the CFE if their insurer denies payment. *Id.*  Finally, the tribunal directed the CFE to hold Petitioners harmless against any and all liabilities resulting from the lawsuit before the Unitary Agrarian Tribunal (*Tribunal Unitario Agrario*) under Docket No. 796/2017 brought by local communal landholders against Petitioners seeking damages for the occupation of their land during the construction of the Project. *Id.*

32.     The CFE has failed to pay any of the Awarded Amounts through the date of this filing.

## ARGUMENT

33.     "Confirmation under the Convention is a summary proceeding in nature, which is not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm." *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007).  "[R]eview of arbitral awards under the New York Convention is very limited in order to avoid undermining the twin goals of arbitration, namely, settling disputes

efficiently and avoiding long and expensive litigation." *Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 405 (2d Cir. 2009); *see also Agility Public Warehousing Co. v. Supreme Foodservice GmbH*, 840 F. Supp. 2d 703, 710 (S.D.N.Y. 2011), *aff'd*, 2012 WL 3854880 (2d Cir. Sept. 6, 2012) ("The role of a district court in reviewing an arbitral award is narrowly limited.") (citations and quotations omitted). Consistent with its purpose "to remove obstacles to confirmation," *In re Waterside Ocean Nav. Co.*, 737 F.2d 150, 153 (2d Cir. 1984), the Convention manifests a "general pro-enforcement bias." *American Constr. Mach. & Equip. Corp. v. Mechanised Constr. of Pakistan, Ltd.*, 659 F. Supp. 426, 428 (S.D.N.Y. 1987), *aff'd*, 828 F.2d 117 (2d Cir. 1987).

34.     This Petition for confirmation and enforcement of the Award should be granted because, as demonstrated immediately below:  (A) all statutory conditions for confirmation and enforcement are satisfied and (B) none of the limited grounds for refusal to confirm exist.

**A.     Petitioners Have Satisfied All of the Statutory Conditions for Confirmation and Enforcement**

35.     This Petition falls within the confirmation and enforcement regime of the Convention and satisfies the statutory requirements for confirmation and enforcement.

36.     Chapter 2 of the FAA, 9 U.S.C. § 201 *et seq.*, authorizes federal courts to enforce foreign arbitral awards that are governed by the Convention.  Article I(1) of the Convention states that it "shall apply to the recognition and enforcement of arbitral awards . . . not considered as domestic awards in the State where their recognition or enforcement is sought."  Section 202 of the FAA provides that an award is considered non-domestic if it arises out of a legal relationship that is "not entirely between citizens of the United States" or that "involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states."  9 U.S.C. § 202; *see Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys*

14

*"R" Us, Inc.*, 126 F.3d 15, 19 (2d Cir. 1997).  Here, the Award arose from a legal relationship between Petitioners (entities organized under the laws of the Mexico and Costa Rica) on the one hand and the CFE (an entity organized under the laws of Mexico and an agency or instrumentality Mexico) on the other hand.  Therefore, the Award is not "entirely between citizens of the United States."  *See supra* ¶¶ 1-5.  Moreover, the legal relationship involved performance abroad, namely in Mexico.  *See supra* ¶ 16; *see also F. Hoffmann-La Roche Ltd. v. Qiagen Gaithersburg, Inc.*, 730 F. Supp. 2d 318, 325 (S.D.N.Y. 2010) (finding that an award was international and within the scope of the Convention when the arbitration involved matters "clearly beyond the borders of the United States").  Consequently, the Award is non-domestic and falls within the Convention.

37.     Finally, the petition is brought within the three-year statute of limitations provided for by 9 U.S.C. § 207.  *See* 9 U.S.C. § 207 ("Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration.").  The Award was rendered on June 22, 2020, and the petition is therefore well within this period.

**B.     None of the Limited Grounds to Refuse Confirmation and Enforcement Exist**

38.     The FAA mandates that a court "*shall* confirm the award" unless one of the grounds for refusal specified in the Convention applies.  9 U.S.C. § 207 (emphasis added); *see Telenor Mobile*, 584 F.3d at 405; *In re Oltchim, SA.*, 348 F. Supp. 2d 97, 100 (S.D.N.Y. 2004).  "The party asserting that one of the exceptions applies has the burden of establishing it," *MGM Productions Group v. Aeroflot Russian Airlines*, 573 F. Supp. 2d 772, 776 n.6 (S.D.N.Y. 2003), *aff'd*, 91 F. App'x 716 (2d Cir. Feb. 9, 2004), and "the burden of proof required to avoid confirmation is very high," *Agility Public Warehousing*, 840 F. Supp. 2d at 710.

39.     None of the grounds for refusing enforcement of an award set forth in Article V(1)

of the Convention applies here.  Nor does either of the grounds set forth in Article V(2) of the

Convention apply.

## **CONCLUSION**

For the foregoing reasons, Petitioners respectfully petition this Court pursuant to Article

IV of the Convention and 9 U.S.C. §§ 201, 202, and 207, to:

a.  Enter an order confirming and enforcing the Award against Respondent;

b.  Enter judgment that Respondent is liable to Petitioners in the amount of the Awarded Amounts plus pre-judgment interest as provided in the Award;

c.  Enter judgment that Respondent is liable to Petitioners for post-judgment interest at the applicable statutory rate;

d.  Enter an order requiring Respondent to pay the costs incurred by Petitioners in connection with this proceeding; and

e.  Award such further relief as may be just and proper.

Dated:    New York, New York
          July 24, 2020

                              Respectfully Submitted,

                              */s/ Andreas A. Frischknecht*
                              Andreas A. Frischknecht
                              Ted Debonis

                              **CHAFFETZ LINDSEY LLP**
                              1700 Broadway, 33rd Floor
                              New York, NY 10019
                              Tel. (212) 257-6960
                              Fax (212) 257-6950

                              *Attorneys for Petitioners Omega Construcciones*
                              *Industriales, S.A. de C.V., Sinohydro Costa Rica, S.A.,*
                              *Desarrollo y Construcciones Urbanas, S.A. de C.V.,*
                              *and CAABSA Infraestructura, S.A. de C.V.*

16